Kenneth S. MCARDLE

v.

MATTEL INC.

No. 1:06–CV–103.

United States District Court,
E.D. Texas,
Beaumont Division.

Sept. 13, 2006.

Christopher Todd Coco, Provost Umphrey, Beaumont, TX, Clayton Edward Dark, Jr., Attorney At Law, Lufkin, TX, for Plaintiff.

Lawrence Louis Germer, Charles W. Goehringer, Jr., Germer Bernsen & Gertz, Beaumont, TX, Patricia A. Millett, Lawrence Y. Iser, Kinsella Weitzman Iser Kump & Aidisert, Santa Monica, CA, Guy E. Matthews, The Matthews Firm, Houston, TX, Charles J. Pignuolo, Devlin & Pignuolo, Houston, TX, for Defendants.

## *ORDER OVERRULING OBJECTIONS AND ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS*

HEARTFIELD, District Judge.

The court referred this matter to the Honorable Earl S. Hines, United States magistrate judge, at Beaumont, Texas, for consideration pursuant to applicable laws, orders of this court and, particularly, General Order 05–07.

After considering defendant Mattel Inc.'s motion to dismiss, the magistrate judge recommends granting the motion in part and denying it in part. Plaintiff does not object. However, defendant objects to the magistrate judge's analysis and recommendations that the motion be partially denied with respect to plaintiff's claims for (1) negligent misrepresentation; (2) breach of implied contract; and (3) trade dress infringement. Further, defendant objects to the magistrate judge's recommendation that plaintiff's fraud claim be dismissed based on failure to comply with Rule 9, Federal Rule of Civil Procedure, instead of Copyright Act preemption.

Having considered the magistrate judge's report and conducted a *de novo* review of defendant's objections, the court concludes that the findings of fact and conclusions of law of the magistrate judge are correct, and defendant's objections are not meritorious. The asserted causes of action for breach of implied contract and negligent misrepresentation have qualitatively different elements and rest on sufficiently alleged distinct facts, *viz.*, promises, statements and representations to pay plaintiff for his work, so that these claims are not preempted. Similarly, plaintiff's trade dress infringement claim is not premised on expression of his work, but on the source and meaning his product has acquired in the market, and is not preempted. Finally, the court finds no reason to engage in purely academic exercise of examining defendant's objection regarding plaintiff's common law fraud claim. The magistrate judge's report recommends that the claim be dismissed under

Rule 9, and plaintiff does not object. Although defendant apparently prefers dismissal on another ground asserted in its motion, there is no prejudice to defendant because defendant will receive complete relief under the magistrate judge's analysis and recommendation.

Accordingly, defendant's objections are **OVERRULED**, and the report of the magistrate judge is **ADOPTED**.

By separate order, the court will implement the recommendations submitted by the magistrate judge.

## *REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE*

HINES, United States Magistrate Judge.

This report addresses Defendant Mattel Inc.'s Motion to Dismiss Plaintiff's First Amended Complaint under Rule 12(b)(6).[1]

### I. PARTIES

Plaintiff Kenneth McArdle is a resident of Harris County, Texas. Plaintiff alleges that he is a creator of games, characters, and toys, and the author of books for children.

Defendant is Mattel, Inc. (Mattel). Defendant's principal place of business is in El Segundo, California. Defendant's primary business centers on production and marketing of premier toy brands.

### II. BACKGROUND

Plaintiff alleges that he conceived and created a children's book titled "The Magical World of Wishes and Dreams" *(Wishes and Dreams)*. In 2001, plaintiff copyrighted the text of *Wishes and Dreams* which included eight mini stories. In 2002, plaintiff again copyrighted the text and nine additional mini stories. He also registered as a trademark the words, "The Magical World of Wishes and Dreams." Finally, in 2003, plaintiff's new illustrations, revised text, new artwork and poems for *Wishes and Dreams* were copyrighted.[2]

Plaintiff alleges that his *Wishes and Dreams* book was shipped to stores nationwide in 2002. In April of 2005, plaintiff discovered that Mattel was marketing a line of products known as Barbie's "Fairytopia—Make a Magical World" *(Fairytopia )*. Plaintiff alleges that Mattel's *Fairytopia* products are substantially similar to the concepts, ideas, materials, and other items comprising his *Wishes and Dreams* products. Consequently, Mattel's *Fairytopia* infringes plaintiff's federally protected copyrights and trademarks.

Plaintiff contends that Mattel's infringements are not accidental. Plaintiff alleges that over an unspecified period of time, "Mattel representatives" told him that inventors were compensated by Mattel when their ideas, materials, creative expressions and products inspired a Mattel project or product line. Plaintiff states that he provided his own ideas and products related to *Wishes and Dreams* to Mattel's inven-

---

1. This action is assigned for trial to Hon. Thad Heartfield, United States district judge, and is referred to the undersigned United States magistrate judge for pretrial management pursuant to 28 U.S.C. § 636 and General Order 05–07.

2. On April 13, 2006, by motion of defendant Mattel Inc., the court took judicial notice of plaintiff's federal copyright registrations, Reg

Nos. Txu 1–014–535, Txu 1–025–053, and Txu 6–144–551. Further, plaintiff has also presented to the court a "Certificate of Registration," showing the phrase "The Magical World of Wishes and Dreams" has been registered with the United States Patent and Trademark Office. Pl.'s First Am. Compl. at 3 (Docket No. 20–4).

tor relations department for several years. Pl.'s First Am. Compl. at 2 (Docket No. 20).

Plaintiff alleges that he and Mattel discussed his products, ideas, and concepts related to *Wishes and Dreams,* and he also directed Mattel to view his website containing his works. Plaintiff further alleges that he discussed with Mattel how his book, storyline, movie, including all the characters related to *Wishes and Dreams* would "be a perfect fit for Mattel's Barbie line of products." Pl.'s First Am. Compl. at 3.

Although plaintiff continuously followed up on these conversations, Mattel seemed uninterested in *Wishes and Dreams.* Plaintiff alleges that Mattel simply requested him to keep in touch with the company and to continue presenting his ideas to Mattel for review.

### III. PROCEEDINGS; NATURE OF SUIT

Plaintiff originally filed this action in the 172nd Judicial District Court of Jefferson County, Texas. Mattel removed the action to federal court on the basis of federal question jurisdiction, and, in addition, alleged that venue in the Eastern District of Texas, Beaumont Division, is appropriate pursuant to Title 28, United States Code, Section 1392(b)-(c), because a substantial part of the alleged events or omissions giving rise to plaintiff's claims occurred in this district.

On March 3, 2006, plaintiff's original counsel in state court withdrew. Subsequently, on March 13, 2006, and upon motion, the court enrolled four new counsel for plaintiff.[3] Thereafter, and with leave of court, substitute counsel filed a first amended complaint on April 12, 2006.

The straightforward and uncomplicated factual scenario described in Section II, above, is deceptive in the sense that it provides little clue of the complex and eclectic legal consequences that plaintiff perceives as having emanated from Mattel's alleged conduct. Plaintiff's first amended complaint alleges not only the obvious infringement causes of action under federal copyright and trademark statutes, but also a smorgasbord of other claims purportedly arising under state and federal law. Altogether, plaintiff's scattergun complaint alleges 14 separate and distinct causes of action described in tabular format as follows:

| CAUSE OF ACTION | LEGAL BASIS |
|---|---|
| 1. Copyright Infringement | Copyright Act, 17 U.S.C. §§ 1101–1332 |
| 2. Trademark Infringement | Lanham Act, 15 U.S.C. §§ 1051–1127 |
| 3. Trade Dress Infringement | Lanham Act, 15 U.S.C. §§ 1051–1127 |
| 4. Passing Off | Lanham Act, 15 U.S.C. §§ 1051–1127 |
| 5. Trademark Infringement | Tex. Bus. & Com.Code, Ch. 16 |
| 6. Trademark Infringement | Texas Common Law |
| 7. Unjust Enrichment | Texas Common Law |
| 8. Unfair Competition | Texas Common Law |
| 9. Breach of Confidential Relationship | Texas Common Law |
| 10. Breach of Implied Contract | Texas Common Law |
| 11. Quantum Meruit | Texas Common Law |
| 12. Fraud | Texas Common Law |
| 13. Negligent Misrepresentation | Texas Common Law |
| 14. Misappropriation of Confidential Information | Texas Common Law |

---

**3.** New counsel for plaintiff are Christopher T. Coco, Esq., Clayton E. Dark, Jr., Esq., Guy E. Matthews, Esq., and Bruce R. Coulombe, Esq.

## IV. MOTION TO DISMISS

Mattel does not challenge plaintiff's amended complaint regarding what the preceding section characterized as "obvious" infringement claims brought under federal statutes. However, Mattel moves the court to dismiss most of the state law claims and some federal law claims pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure. As to the challenged claims, Mattel argues that the complaint fails to state a claim upon which relief can be granted either because (a) the claims are preempted by federal copyright law; (b) the complaint fails to aver facts that, if proven, would entitle plaintiff to recover; or (c) the complaint fails to satisfy a heightened pleading standard.

Plaintiff's response argues that all state-law claims survive preemption because they require proof of qualitatively different conduct than the elements for an action under the Copyright Act. Plaintiff asserts that his state law claims all center on Mattel's breach of contract and fiduciary duties, which have qualitatively different elements than contemplated by federal copyright law. Plaintiff further asserts that his cause of action for fraud is sufficiently pled.

Mattel filed a reply, and plaintiff filed a surreply. Both amplified and clarified arguments originally advanced.

## V. ANALYTICAL PRINCIPLES GOVERNING MOTIONS TO DISMISS

On a Rule 12(b)(6) motion to dismiss, the court must decide whether facts alleged, if true, would entitle plaintiff to some legal remedy. See Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Dismissal is proper only if there is either: (1) "the lack of a cognizable legal theory," or (2) "the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir.1988). "Normally, in deciding a motion to dismiss for failure to state a claim, courts must limit their inquiry to facts stated in the complaint and the documents either attached to or incorporated in the complaint." Lovelace v. Software Spectrum, Inc., 78 F.3d 1015, 1017 (5th Cir.1996). The court also may "consider matters of which [it] may take judicial notice." Id. at 1017–18; see Fed. R.Evid. 201(f). Matters of public record, items appearing in the record of the case, and exhibits attached to the complaint also may be considered. See 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed.1990).

The court must accept as true all material allegations in the complaint as well as any reasonable inferences to be drawn from them. See Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir.1982). Moreover, well-pleaded facts must be reviewed in the light most favorable to plaintiff. See Piotrowski v. City of Houston, 51 F.3d 512, 514 (5th Cir.1995). A plaintiff, however, must allege specific facts, not conclusory allegations. See Elliott v. Foufas, 867 F.2d 877, 881 (5th Cir.1989). Conclusory allegations and unwarranted deductions of fact are not admitted as true. See Guidry v. Bank of LaPlace, 954 F.2d 278, 281 (5th Cir.1992).

"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45–46, 78 S.Ct. 99. "The motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." Kaiser Aluminum, 677 F.2d at 1050. However, "[d]ismissal under Rule 12(b)(6) is proper if the complaint lacks an allegation regarding a required element neces-

sary to obtain relief." 2 *Moore's Federal Practice* § 12.34(4)(a) at 12–72.7 (3d ed.2006). Finally, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Fernandez–Montes v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir.1993).

## VI. COPYRIGHT LAW & FEDERAL PREEMPTION

■ Generally, copyright law affords authors exclusive rights and protections, such as the "right to prevent copying of the copyrighted work in any medium." 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* §§ 6:13 to 6:14 (4th ed.2006) [hereinafter *McCarthy*]. The Copyright Act expressly preempts all legal and equitable rights at common law or state law that are equivalent to any of the exclusive rights within the Copyright Act.[4]

■ In this circuit, well-settled precedent instructs lower trial courts in the appropriate analytical exercise for determining when federal copyright law preempts a state law claim. *Carson v. Dynegy, Inc.,* 344 F.3d 446, 456 (5th Cir. 2003); *Daboub v. Gibbons,* 42 F.3d 285, 288–89 (5th Cir.1995). The analytical framework for deciding preemption *vel non* consists of a two-pronged, pragmatic test. Both prongs must be met to preempt a claim. "First, the claim is examined to determine whether it falls 'within the subject matter of copyright' as defined by 17 U.S.C. § 102." *Carson,* 344 F.3d at 456 (quoting *Daboub,* 42 F.3d at 289). Second, "the cause of action is examined to determine if it protects rights that are 'equivalent' to any of the exclusive rights of a federal copyright, as provided in 17 U.S.C. § 106."[5] *Id.* When evaluating the equivalency of rights, this circuit uses what is called the "extra element" test. *Carson,* 344 F.3d at 456 (citing *Alcatel USA, Inc. v. DGI Technologies, Inc.,* 166 F.3d 772, 787 (5th Cir.1999)). That test requires that if:

[O]ne or more *qualitatively different* elements are required to constitute the state-created cause of action being asserted, then the right granted under

---

**4.** The Copyright Act of 1976 provides:

On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a) (2005).

**5.** Title 17, United States Code, Section 106 provides:

[T]he owner of copyright under this title has the exclusive rights to do and to authorize any of the following:
(1) to reproduce the copyrighted work in copies or phonorecords;

(2) to prepare derivative works based upon the copyrighted work;
(3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;
(4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;
(5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and
(6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

17 U.S.C. § 106 (2005).

state law does not lie within the general scope of copyright, and preemption does not occur.

*Id.* (emphasis added). Further, beyond the elements required in a state cause of action, courts look to the core theory for which it is premised to decide the equivalency issue. *See Daboub,* 42 F.3d at 289.

### VII. PREEMPTION DISCUSSION AND ANALYSIS

 Mattel contends that plaintiff's claims for unjust enrichment, quantum meruit, fraud, negligent misrepresentation, misappropriation of confidential information and breach of contract are preempted. Each of these causes of action has been considered by the governing circuit court of appeals and district courts within this circuit under analytically indistinguishable circumstances. Given these precedents, there is no need to reinvent the wheel with a lengthy reexamination of each claim asserted here. Simply stated, well-established law teaches that claims for breach of contract, fraud and negligent misrepresentation are *not* preempted by the Copyright Act.[6] However, claims for unjust enrichment, quantum meruit and misappropriation premised on facts similar to those alleged by plaintiff are preempted.[7] Therefore, these latter claims should be dismissed.

### VIII. BREACH OF CONFIDENTIAL RELATIONSHIP

Mattel argues that this cause of action should be dismissed for failure to aver facts upon which relief can be granted. First, Mattel argues that this claim is not viable because—under plaintiff's own allegations—his work was not confidential.

---

6. Existence of a promise makes a breach of contract claim qualitatively different from a claim based on copying, distributing, or displaying under the Copyright Act. *See Taquino v. Teledyne Monarch Rubber,* 893 F.2d 1488, 1501 (5th Cir.1990); *Asunto v. Shoup,* 132 F.Supp.2d 445, 452 (E.D.La.2000).

"[F]raud or negligent misrepresentation claims are generally not preempted because they involve the element of a statement or misrepresentation that induced the plaintiff's reliance and caused damages not attributable to copyright infringement." *Zito v. Steeplechase Films, Inc.,* 267 F.Supp.2d 1022, 1027 (N.D.Cal.2003) (citing *Valente–Kritzer Video v. Pinckney,* 881 F.2d 772, 776 (9th Cir.1989)); *see Computer Mgmt. Assistance Co. v. Robert F. DeCastro, Inc.,* 220 F.3d 396, 404–05 (5th Cir.2000).

7. Unjust enrichment and quantum meruit are equitable, quasi contractual claims that exist when there is no express agreement. The Copyright Act generally preempts both claims. *Recursion Software, Inc. v. Interactive Intelligence, Inc.,* 425 F.Supp.2d 756, 769 (N.D.Tex.2006); *Asunto,* 132 F.Supp.2d at 453 (citing 1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 1.01[B][1], at 1–38 (2000)). Preemption is appropriate because the core of plaintiff's theory, as here, usually relates to defendant's use of the copyrighted material. *See Recursion,* 425 F.Supp.2d at 769; *Asunto,* 132 F.Supp.2d at 453. Federal copyright law provides full protection, and the need for equitable relief is unfounded.

State misappropriation law is specifically designed "to protect the *labor*-the so-called 'sweat equity'-that goes into creating a work." *Alcatel,* 166 F.3d at 788. Although the elements are "seemingly divergent" from copyright claims, a misappropriation claim is preempted when it touches interests clearly protected by the Copyright Act and there are no allegations rendering the claim different in kind, even though the cause of action is facially distinctive from a copyright action. *Alcatel,* 166 F.3d at 788–789. Therefore, a plaintiff asserting a misappropriation claim must affirmatively demonstrate presence of an element that renders plaintiff's claim different in kind from rights protected under federal law in order to prevent preemption of its state misappropriation claim. *Id.* at 789. Here, plaintiff alleges Mattel used his work in competition with plaintiff, depriving plaintiff of profits he would have received, and nothing more. Plaintiff fails to allege any facts to show he asserts a right different in kind from a copyright claim.

Specifically, Mattel argues that plaintiff disclosed the information at issue in the public domain through plaintiff's website. Second, Mattel argues that plaintiff's complaint fails to allege facts sufficient to establish an essential element of this claim, *viz.*, existence of a prior relationship of special trust and confidence.

In response, plaintiff argues that information available on the internet was not confidential, and that his submissions and creative work privately disclosed to Mattel were much more extensive. Second, plaintiff argues that his relationship with Mattel was long-standing, and that he never would have submitted *Wishes and Dreams* to Mattel absent a confidential relationship and assurances that he would be paid for inspiring a product line.

## A. Elements of the Claim

■ Confidential relationships may arise "when parties have dealt with each other in such a manner for a long period of time that one party is justified in expecting the other to act in its best interest." *Insurance Co. of North America v. Morris*, 981 S.W.2d 667, 676 (Tex.1998). "Such relationships may arise from moral, social, domestic or purely personal relationships of trust and confidence." *Associated Indem. Co. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 287 (Tex.1998) (citing *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex.1962)). Texas law recognizes the existence of informal fiduciary relationships to prevent acquired influence from abusing one's vested confidence. *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 594 (Tex.1992).

■ The term "fiduciary" includes those "informal relations which exists whenever one party trusts and relies upon another, as well as technical fiduciary relations." *Texas Bank and Trust Co. v. Moore*, 595 S.W.2d 502, 507 (Tex.1980).

"To impose an informal fiduciary duty in a business transaction, the special relationship of trust and confidence must exist *prior to, and apart from, the agreement made the basis of the suit.*" *Associated Indem.*, 964 S.W.2d at 288 (emphasis added); *Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 280 (Tex.1995). In addition, a plaintiff must prove: (1) a fiduciary relationship between the parties; (2) defendant breached its fiduciary duty; and (3) the breach caused injury to plaintiff or benefit to defendant. *Kelly v. Gaines*, 181 S.W.3d 394, 414 (Tex.App.2005); *Punts v. Wilson*, 137 S.W.3d 889, 891 (Tex.App. 2004).

## B. Application and Analysis

■ Plaintiff's response successfully rebuts Mattel's argument that no confidential relationship existed due to public dissemination of material through plaintiff's website. Mattel's motion turns, therefore, on the second contention which asserts that plaintiff fails to allege a prior relationship of special trust and confidence.

■ In mostly conclusory terms, plaintiff alleges that the parties had a relationship for years that prompted him to trust Mattel with confidential materials regarding *Wishes and Dreams*. These allegations, however, are insufficient to survive Mattel's motion. The cause of action now under consideration cannot be sustained by alleging subjective trust, a broken promise, or a material misrepresentation. Such conduct may give rise to other cognizable claims, but, without more, they do not allege a cause of action for breach of a confidential relationship. No matter how long some *abstract* relationship may have existed, the *sine qua non* for this cause of action is a *concrete* relationship prior to and apart from circumstances made the basis of this suit *objectively jus-*

*tifying* an expectation that the accused party will act in the accuser's best interest.

The most obvious and logical examples would be prior transactions under similar circumstances. Here, however, plaintiff's complaint does not aver that—*prior to and apart from* his discussions and submissions regarding *Wishes and Dreams*—plaintiff supplied Mattel with confidential materials, and Mattel compensated him for a product line inspired by plaintiff. Nor does plaintiff allege that Mattel received and evaluated confidential information, returned it to him without compensation, but refrained from copying or otherwise using that information. In short, plaintiff has failed to make factual allegations necessary to state a breach-of-confidential-relationship claim upon which relief can be granted.

## IX. TRADE DRESS INFRINGEMENT

Trade dress of a product is essentially its "total image and overall appearance." *Blue Bell Bio–Medical v. Cin-Bad, Inc.*, 864 F.2d 1253, 1256 (5th Cir. 1989); *see TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 28, 121 S.Ct. 1255, 149 L.Ed.2d 164 (2001). A trademark infringement claim determines whether a "discrete symbol" functions as a mark and whether the mark is likely to cause confusion on the market. 1 McCarthy, *supra*, at § 8:1. Trade dress violations, however, trigger much broader protection by focusing on the "total image or overall impression" of a product, packaging, and advertising in comparison with a defendant's accused product to determine likelihood of confusion. *Id.* Unlike copyright law, trade dress law does not protect one's innovation or creativity. *Id.* It provides further protection to a product when it can be proven that its dress "identifies and distinguishes the plaintiff as *source.*" *Id.* (citing *Foamation, Inc. v. Wedeward Enterprises, Inc.*, 970 F.Supp. 676, 685 (E.D.Wis.1997)) (emphasis added). Simply put, it prevents market confusion.

Federal law protects against trade dress infringement. *TrafFix*, 532 U.S. at 28, 121 S.Ct. 1255. Section 43(a) of the Lanham Act is commonly used as a device to assert claims of trade dress infringement in federal courts.[8] *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992); *see Chevron Chem. Co. v. Voluntary Purchasing Groups, Inc.*, 659 F.2d 695 (5th Cir. 1981). The purposes of trade dress protection are to promote competition, to secure the goodwill of one's business, and to allow consumers to distinguish among competing products. *TrafFix Devices, Inc.*, 532 U.S. at 28, 121 S.Ct. 1255; *Two Pesos*, 505 U.S. at 774, 112 S.Ct. 2753.

Obviously, therefore, Mattel does not seek a Rule 12(b)(6) dismissal on the

---

8. Section 43 of the Lanham Act is codified as Title 15, United States Code, Section 1125, and Section 1125(a)(1) provides:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1) (1999).

ground that plaintiff's complaint lacks a cognizable legal theory. Instead, Mattel's argument is similar to its argument in the preceding section, i.e., that the factual allegations of plaintiff's complaint do not suffice to assert a separate claim for trade dress infringement. Mattel advances its now familiar and primary argument that plaintiff's factual allegations relate exclusively to assertions that Mattel infringed upon plaintiff's expression of creative and expressive works, a matter protected by his copyrights.

Curiously, plaintiff fails to respond to this argument. See Pl.'s Resp. (Docket No. 26).

The court's independent review discloses that plaintiff's complaint alleges that his use of "specific color combinations, elements, word phrases, characters, setting, and plot themes are distinctly associated with his product, [and] have acquired secondary meaning on the market and constitute trade dress." Pl.'s First Am. Compl. at 8. He further asserts that Mattel incorporated this trade dress in the *Fairytopia* product line, thereby creating confusion on the market as to the true origin and nature of plaintiff's trade dress.

These allegations are not elaborate, but broadly read, they barely survive Mattel's motion. Plaintiff has pled sufficient facts along with legal theory for the court to make reasonable inferences that plaintiff's trade dress claim is not premised on wrongful copying, but rudimentary concerns about his identity on the market and unfair competition. Plaintiff's trade dress claim is not premised on the *expression* of his work, but on the *source*. Plaintiff alleges his dress is distinct and has acquired a secondary meaning, and that Mattel's alleged incorporation of the overall impression of his trade dress has created confusion on the market as to the source of the product.

Mattel's motion should be denied as it relates to this claim.

## X. PASSING OFF (PALMING) CAUSE OF ACTION

### A. The Complaint

In paragraphs 46 and 47, the complaint purports to assert a "passing off" cause of action pursuant to Section 43(a) of the Lanham Act.[9] Specifically, it alleges Mattel used false and misleading designations of origin, descriptions and representations in commerce to produce and market *Fairytopia*, which misrepresented the nature, characteristics, qualities and origin of plaintiff's *Wishes and Dreams* book and trademark, and its associated products and derivations. Plaintiff claims Mattel thereby engaged in unfair competition, by trading on plaintiff's good will related to *Wishes and Dreams*'s mark, book, and its associated products and derivations. As a result, plaintiff alleges Mattel has passed off plaintiff's *Wishes and Dreams* as its own under the guise of *Fairytopia*. Plain-

---

**9.** The Lanham Act was intended to protect persons participating in commerce against unfair competition. *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28, 123 S.Ct. 2041, 156 L.Ed.2d 18 (2003) (citing 15 U.S.C. § 1127). While the Act primarily focuses on the registration and infringement of trademarks, Section 43(a) also provides protections against unfair competition. *Id.* at 29, 123 S.Ct. 2041. As such, Section 43(a) provides a remedy against those who use in commerce a "false designation of origin, false or misleading description of fact, or false or misleading representation of fact." 15 U.S.C. § 1125 (1999). Our circuit, along with many others, finds that Section 43 of the Act is broad enough to encompass passing off. *See Bangor Punta Operations, Inc. v. Universal Marine Co.*, 543 F.2d 1107, 1109 (5th Cir. 1976); *see, also, Dastar Corp.*, 539 U.S. at 30, 123 S.Ct. 2041 (noting our circuit, among many others, recognizes a claim of passing off).

tiff alleges he has been damaged through his loss of control of the goodwill and reputation associated with *Wishes and Dreams,* his loss of being recognized as the creator and originator of the *Fairytopia* product line, and the corresponding confusion and resulting injury to his goodwill and reputation.

## B. Mattel's Motion To Dismiss

Mattel asserts that plaintiff's allegations do not aver a viable passing off claim. Mattel argues that the Lanham Act does not impose liability on a party's alleged failure to identify the creator of intellectual property embodied in a product. Def.'s Mot. to Dismiss at 13 (Docket No. 23). Hence, plaintiff's claim—which Mattel perceives to be based solely on allegations that Mattel failed to identify plaintiff as originator of ideas or communications embodied in *Fairytopia*—fails as a matter of law.

## C. Passing Off and Reverse Passing Off

Passing off is a type of trademark infringement. *See* 4 *McCarthy, supra,* at ch. 25. Passing off (or palming off, as it is sometimes called) occurs when a producer misrepresents his own goods or services as someone else's. *See, e.g., O. & W. Thum Co. v. Dickinson,* 245 F. 609, 621 (6th Cir.1917). "Reverse passing off," as its name implies, is the opposite: The producer misrepresents someone else's goods or services as his own. *See, e.g., Williams v. Curtiss–Wright Corp.,* 691 F.2d 168, 172 (3rd Cir.1982). "A defendant may also be guilty of reverse palming off by selling or offering for sale another's product that has been *modified slightly* and then labeled with a different name." *Roho, Inc. v. Marquis,* 902 F.2d 356, 359 (5th Cir.1990). Both forms of passing off are actionable under federal law. *Id.* They exist to pro-

tect producers of a product who can prove that a defendant "subjectively and knowingly intended to confuse buyers." *See* 4 *McCarthy, supra,* at § 25:3.

Section 43(a) of the Lanham Act—from which passing off actions emanate—requires proof that a defendant used a "false designation of origin" of "goods or services." *See* 15 U.S.C. § 1125(a)(1). Distilled into essential terms, a key component of passing off claims is false designation of the "origin of goods." "Origin" means not only geographic location, but also the source of actual production. *Dastar Corp.,* 539 U.S. at 29, 37, 123 S.Ct. 2041. "Goods" mean merchandise and tangible goods offered for sale at the marketplace. *Id.* at 31, 37, 123 S.Ct. 2041.

Significantly for the instant case, "origin of goods" means the physical producer of tangible products marketed and sold. *See id.* at 33–34, 37, 123 S.Ct. 2041. The term does not connote the person or entity that originated the ideas, concepts or communications embodied in goods. *Id.* at 37, 123 S.Ct. 2041; *see, also, Gen. Universal Sys., Inc. v. Lee,* 379 F.3d 131, 149 (5th Cir.2004).

## D. Application

To the extent plaintiff's passing off claim is raised to protect his interest in intellectual content of the *Fairytopia* product, it is not actionable as a claim of reverse passing off, and should be pursued under copyright law. *See Lee,* 379 F.3d at 149. However, plaintiff alleges Mattel used plaintiff's products as its own. Pl.'s First Am. Compl. at 10. The complaint also asserts Mattel used false and misleading designations of origin and false and misleading descriptions to misrepresent plaintiff's mark and associated products and derivations. *Id.*

A literal, out-of-context reading of these allegations might permit the court to conclude that the complaint asserts a cognizable claim of reverse passing off. However, Rule 8(f), Federal Rules of Civil Procedure, requires the court to construe all pleadings so as to do substantial justice, and the court, therefore, must interpret the complaint in context and harmony with other factual allegations therein. See Fed.R.Civ.P. 8(f) (2006). Here, the complaint clearly reflects that plaintiff alleges that the *Fairytopia* product marketed by Mattel was physically produced by Mattel. *See* Pl.'s First. Am. Compl. at 3. Moreover, plaintiff never alleges that he physically produced the tangible goods marketed for the *Fairytopia* product line. Clearly, plaintiff does not allege that Mattel obtained goods physically produced by plaintiff and then represented those goods as Mattel's.

Rather, Mattel allegedly copied plaintiff's *Wishes and Dreams* product, and then, through marketing, advertising and promotion, gives purchasers the false impression that its *Fairytopia* product is quite different than *Wishes and Dreams.* Such conduct simply is not actionable as reverse passing off under the "confusion ... as to the origin" provision of Section 43(a)(1)(A). *See Dastar Corp.,* 539 U.S. at 38, 123 S.Ct. 2041. This cause of action, therefore, should be dismissed.

## XI. FRAUD CAUSE OF ACTION

■■■ Mattel argues that plaintiff fails to allege who made fraudulent representations to him, or to allege with particularity the contents of those representations. Further, Mattel asserts that plaintiff's complaint fails to allege when or where the representations were made, and fails to plead facts to showing *scienter.*

Plaintiff's response merely states—without elaboration—that the complaint sufficiently contains required information to support a fraud claim. Pl.'s Resp. at 10.

■■■ Rule 9(b), Federal Rules of Civil Procedure, requires fraud claims to be pled with particularity. Rule 9(b)'s requirement of particularity differs with the facts in each case. *Tuchman v. DSC Communications Corp., et al.,* 14 F.3d 1061, 1067–68 (5th Cir.1994). Although an ironclad and rigid analytical framework does not exist when assessing particularity, general guidelines aid courts in determining the issue. *Id.* First, and at a minimum, the rule requires a plaintiff to set forth the "who, what, when, where, how" of the alleged fraud. *Williams v. Bell Helicopter Textron Inc.,* 417 F.3d 450, 453 (5th Cir. 2005). More specifically, Rule 9(b) requires "the particulars of time, place, and contents of false representations as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." *Tuchman,* 14 F.3d at 1068; *Tel–Phonic Services, Inc. v. TBS Int'l, Inc.,* 975 F.2d 1134, 1139 (5th Cir. 1992). Second, although the rule allows *scienter* to be pled generally,[10] the rule still requires "specific facts to support an inference of fraud." *Tuchman,* 14 F.3d at 1068.

Plaintiff has pled facts showing the content of the allegedly false and fraudulent representation. Mattel allegedly told plaintiff inventors were paid if they inspire a product. Plaintiff's complaint also avers he relied on Mattel's promise of payment should his work be used by Mattel. These alleged facts in the complaint, taken as a whole, permit an inference that Mattel had knowledge of the false representation and intended to use it in order to gain access to

---

**10.** Rule 9(b) provides: "Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed.R.Civ.P. 9(b).

plaintiff's work related to *Wishes and Dreams.*

However, plaintiff's complaint fails to meet the particularity requirement on other grounds. The complaint does not aver who made the representation that inventors were paid for inspiring a product. The complaint alleges only that "Mattel's representatives" made false representations. Mattel is a large company and Rule 9(b) requires enough particularity to identify the person who committed the fraud. The complaint further fails to meet the "when" and "where" requirements of particularity. Plaintiff generally asserts, "[o]ver the course of several years," and never pleads where the false representations occurred. These general assertions or absent facts fall short of satisfying the particularity requirement under Rule 9(b).

■ For these Rule 9(b) deficiencies, Mattel's motion to dismiss plaintiff's fraud claim should be granted. However, plaintiff may proceed with his alternative claim for negligent misrepresentation. Our circuit clearly holds that Rule 9(b)'s particularity requirement is inapplicable to claims for negligent misrepresentation, and con-

sidering the complaint, plaintiff has sufficiently alleged facts for such a claim. *See Gen. Elec. Capital Corp. v. Posey,* 415 F.3d 391, 394 (5th Cir.2005); *American Realty Trust, Inc. v. Hamilton Lane Advisors, Inc.,* 115 Fed.Appx. 662, 668 n. 30 (5th Cir.2004); *see, also,* Pl.'s First Am. Complaint at 12.

## XII. RECOMMENDATIONS

1. The court should partially grant defendant's motion pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, and dismiss plaintiff's claims for unjust enrichment, quantum meruit, misappropriation, breach of confidential relationship, passing off and fraud.

2. The court should partially deny defendant's motion regarding plaintiff's claims for breach of implied contract, negligent misrepresentation and trade dress infringement.

3. This action should proceed with respect to the following causes of action which either survive Mattel's motion or were not challenged by the motion:

| CAUSE OF ACTION | LEGAL BASIS |
| --- | --- |
| 1. COPYRIGHT INFRINGEMENT | COPYRIGHT ACT, 17 U.S.C. §§ 1101–1332 |
| 2. TRADEMARK INFRINGEMENT | LANHAM ACT, 15 U.S.C. §§ 1051–1127 |
| 3. TRADE DRESS INFRINGEMENT | LANHAM ACT, 15 U.S.C. §§ 1051–1127 |
| 4. TRADEMARK INFRINGEMENT | TEX. BUS. & COM.CODE, CH. 16 |
| 5. TRADEMARK INFRINGEMENT | TEXAS COMMON LAW |
| 6. UNFAIR COMPETITION | TEXAS COMMON LAW |
| 7. BREACH OF IMPLIED CONTRACT | TEXAS COMMON LAW |
| 8. NEGLIGENT MISREPRESENTATION | TEXAS COMMON LAW |

## XIII. OBJECTIONS

Objections must be: (1) specific, (2) in writing, and (3) served and filed within ten days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed. R.Civ.P. 1(a), 6(b), and 72(b).

A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge of proposed findings and recommendations, *Rodriguez v. Bow-*

*en,* 857 F.2d 275, 276–77 (5th Cir.1988), and (2) appellate review, except on grounds of plain error, of unobjected-to factual findings and legal conclusions accepted by the district court, *Douglass v. United Servs. Auto. Ass'n.,* 79 F.3d 1415, 1417 (5th Cir.1996) (en banc).